JOURNAL ENTRY and OPINION
{¶ 1} Defendants-appellants Cleveland Golden Gloves Association, Daniel Dzina, Fred Kovacs, and Matthew Ging, (collectively, CGG) appeal the trial court's decision requiring CGG and its counsel to relinquish documents to plaintiff-appellee the Ohio Attorney General's office (AG). For the reasons below, we affirm.
{¶ 2} CGG is a charitable trust which from 1995 to 1998, raised money by conducting games of chance pursuant to a bingo license granted by the State. The AG is authorized to conduct administrative searches of the records of charitable organizations that raise money by conducting games of chance. On December 16, 1999, the AG instituted such a search by sending a request for records and information to CGG's counsel. The response to this request was due on January 3, 2000.
{¶ 3} On February 16, 2000, CGG sent a partial response to the request.[1] Although the request sought records from 1995 through 1998, CGG only provided bingo daily sheets from November 1996 through October 1997 and bingo account records from January through December 1997. In a letter dated April 5, 2000, the AG advised CGG that its response did not fully comply with the December 16, 1999 records request.
{¶ 4} As a result of CGG's failure to respond, the AG sent additional requests for documents to CGG's officers in March 2000, and also to CGG's attorney, Gretchen A. Holderman.
{¶ 5} On October 12, 2000, the AG filed a complaint against CGG and its officers Dzina, Kovacs, Ging, and Stackhouse. Attorney Holderman was also named as a defendant. However, Holderman and Stackhouse were voluntarily dismissed from the action.
{¶ 6} On February 27 and 28, 2001, a representative of the AG's office was permitted to inspect CGG's records at its counsel's office. During its review, the AG's office marked nearly 1,000 documents for copying. Due to the volume of documents, the AG requested that the documents be transported to its Columbus office for copying.
{¶ 7} In a letter dated April 18, 2001, CGG's counsel notified the AG's office that it was concerned about surrendering possession of the originals due to a proceeding instituted by the Internal Revenue Service on April 11, 2001. CGG further argued that its rights would be prejudiced if the records were removed from its counsel's office.According to CGG, the only other option would be to send the documents to a commercial copier and that would involve an unduly burdensome cost to copy the documents.
{¶ 8} On May 7, 2001, the AG filed a motion for summary judgment. CGG responded by filing a motion to dismiss the action which the trial court converted into a motion for summary judgment.
{¶ 9} On December 12, 2001, the trial court granted summary judgment in favor of the AG. The court's order required CGG and its counsel to produce the requested documents to the AG at its Cleveland office. Further, the trial court ordered that the Attorney General's office shall permit a representative of defendants' law firm to be present and observe the copying to ensure that there is no destruction, alteration or misplacement of the requested documents.
{¶ 10} On appeal, CGG argues that the trial court erred by ordering CGG to deliver its records to the AG's office. It maintains that, pursuant to R.C. 109.24, the trial court should have ordered the AG to examine the documents at CGG's counsel's office. Further, CGG maintains that the trial court abused its discretion by issuing an unreasonable and unnecessarily burdensome discovery order. We disagree.
{¶ 11} The AG is authorized to conduct administrative searches of the records of charitable organizations that raise money by conducting games of chance. R.C. 109.24; R.C. 2915.10(B)(2); see also, Flack v. Montgomery, (Oct. 7, 1996), 4th Dist. No. 95CA1684.
{¶ 12} R.C. 2915.10(A)(1)-(7) sets forth the specific records that a charitable organization that conducts a bingo session must maintain for at least three years. R.C. 2915.10(B) further provides that the attorney general may investigate any charitable organization or its officers, and may examine the accounts and records of the organization.
{¶ 13} R.C. 2915.10(C) states that No person shall destroy, alter, conceal, withhold, or deny access to any accounts or records of a charitable organization that have been requested for examination, or obstruct, impede, or interfere with any inspection, audit, or observation of a bingo game or scheme or game of chance or premises where a bingo game or scheme or game of chance is operated, or refuse to comply with any reasonable request of, or obstruct, impede, or interfere with any other reasonable action undertaken by, the attorney general or a local law enforcement agency pursuant to division (B) of this section.
{¶ 14} R.C. 109.24 governs the administration and enforcement of charitable trusts and provides in pertinent part:
 {¶ 15} The attorney general may investigate transactions and relationships of trustees of a charitable trust for the purpose of determining whether the property held for charitable * * * purposes has been and is being properly administered in accordance with fiduciary principles as established by the courts and statutes of this state. The attorney general is empowered to require the production of any books or papers which are relevant to the inquiry. Each such request shall be in writing, and shall do all of the following: * * * (E) State the place where and the time within which any books or papers are to be produced, provided, however, that copies of such books and papers may be produced in lieu of the originals.
{¶ 16} In its initial request, the AG's office stated that CGG was to deliver the requested documents to its Columbus office by January 3, 2000.
{¶ 17} However, R.C. 109.24 further provides that no request shall contain any requirement which would be held to be unreasonable or oppressive * * *. If the production of documents required by the request would be unduly burdensome, the person upon whom the request is served, in lieu of producing such books or papers at the place designated in the request, shall make such books or papers available for inspection, copying, or reproduction at the place where such books or papers are kept.
{¶ 18} At the time that the AG filed its motion for summary judgment, the only issue left to be resolved was the timing for delivery of CGG's records and payment for photocopies. The AG argues that making documents available for inspection does not constitute producing documents as is required by R.C. 109.24.
{¶ 19} The records were initially requested in December 1999 and due in January 2000. The IRS issue did not arise until April 11, 2001. Now CGG maintains that it cannot release the original documents without prejudicing its rights, and that it would be unduly burdensome for it to have to pay for copies at a commercial copy center.
{¶ 20} CGG has failed to establish how the AG's request is unduly burdensome. It maintains that the documents are contained in 27 banker's boxes and that said boxes were moved from its prior counsel's offices to its current counsel's offices. Therefore, the documents are capable of being moved. CGG would prefer to have the documents sent to a commercial copy center rather than have the documents transported to the AG's office for copying under the supervision of CGG's counsel. CGG also wants the AG's office to then pay the copying costs. This solution creates an unnecessary cost when the copying can be done at the AG's office.
{¶ 21} The trial court created a sound resolution to the issues at hand by compromising and allowing CGG to produce the documents at the AG's Cleveland office rather than transporting the documents from Cleveland to Columbus. Since R.C. 109.24 requires CGG to produce the documents in question, we fail to see how this court-created compromise is unduly burdensome to CGG. Accordingly, the trial court's decision is affirmed.
It is ordered that appellee recover of appellants its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TIMOTHY E. McMONAGLE, A.J. and JAMES D. SWEENEY, J. CONCUR.
N.B. This entry is an announcement of the court's decision. See App.R. 22(B), 22(D) and 26(A); Loc.App.R. 22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22(E) unless a motion for reconsideration with supporting brief, per App.R. 26(A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22(E). See, also, S.Ct.Prac.R. II, Section 2(A)(1).
[1] CGG admits in its motion to dismiss that the initial response was incomplete.